**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**AIKEN DIVISION**

| | | |
|---|---|---|
| TINA MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:10-2182-MBS -JRM |
| | ) | |
| v. | ) | |
| | ) | |
| NOVO NORDISK, INC., | ) | **REPORT AND RECOMMENDATION** |
| ANGELA SUTTON, JASON | ) | |
| MOVIUS, LEAH GREGG, | ) | |
| BILL THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Tina Moore ("Moore") originally filed this case in the Court of Common Pleas for Aiken County. Defendant, Novo Nordisk, Inc. ("Novo"), removed the case to this Court on August 19, 2010. On August 25, 2010, Novo and the individual Defendants[1] filed a "Motion for Partial Dismissal of the Complaint and Motion to Partially Strike the Complaint." Moore filed an opposition memorandum on September 9, 2010. Defendants filed a reply on September 20, 2010.

The complaint alleges that Novo is a foreign corporation incorporated in New Jersey which is a global pharmaceutical manufacturer and distributor. Moore alleges that she was terminated from her position of "Senior Diabetes Care Specialist (Pharma Rep)" by Novo, after a corporate snafu involving illegal gifts of autographed basketballs to physicians to gain their favor in prescribing or

---

[1]The individual Defendants, Angela Sutton ("Sutton"), Jason Movius ("Movius"), Leah Gregg ("Gregg"), and Bill Thompson ("Thompson"), are all Novo employees.

1

recommending Novo products,[2] and also after she suffered a broken ankle. Moore alleges the following claims:

1. Breach of contract (Count 1);

2. Breach of contract accompanied by a fraudulent act (Count 2);

3. Sex discrimination in violation of Title VII (Count 3);

4. Retaliatory wrongful discharge in violation of public policy against the common law and the statutory law of the States of South Carolina and New Jersey, and a violation of the New Jersey Conscientious Employee Protection Act ("CEPA") (Count 4);

5. Wrongful discharge in violation of public policy against the common law of the State of South Carolina (Count 5);

6. Violation of the Family Medical Leave Act ("FMLA") and the New Jersey Family Leave Act ("NJFLA") (Count 6);

7. Intentional infliction of emotional distress ("IIED") (Count 7);

8. Breach of the duty of good faith and fair dealing (Count 8); and

9. Civil Conspiracy (Count 9).

Defendants have not moved for dismissal of Moore's Title VII and FMLA claims.

## Discussion

**A. Title VII and FMLA (Counts 3 and 6)**

The Defendants, in addition to Novo, are four of its employees, Sutton, Movius, Gregg, and

---

[2]Moore alleges that Sutton advised her and Movius to purchase basketballs for autographs and distribution. Moore did as instructed. When word of the scheme got out, Sutton advised Moore to deny the scheme. Moore denied the scheme to corporate counsel. However, when evidence of Moore's involvement was obtained, Moore admitted to corporate counsel that she had given a doctor one of the autographed basketballs. (Complaint, ¶¶ 11-29).

Thompson. The complaint describes the parties, makes jurisdictional allegations, alleges certain facts, and then states the above nine claims. However, the compliant does not make clear which claims apply to specific Defendants. The present motion to dismiss assumes each claim applies to all Defendants.

Sutton, Movius, Gregg and Thompson argue that they should be dismissed from Moore's Title VII and FMLA claims because they are not employers as defined by those statutes. Moore concedes that she makes no claims against these "individual defendants" under Title VII or the FMLA. (Pl.Mem., p. 1). Therefore, Sutton, Movius, Gregg and Thompson should be dismissed insofar as they are being sued under Title VII or the FMLA.

**B. Movius - Lack of Jurisdiction**

Movius, alleged to be a resident of Georgia (Complaint, ¶ 4), asserts that he should be dismissed as a Defendant because he is not subject to this Court's jurisdiction. To validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir.2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of Fourteenth Amendment due process. Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir.2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir.2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether Defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310,

316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted).

When personal jurisdiction is challenged pursuant to Rule 12(b)(2), Fed.R.Civ.P., the Plaintiff has the burden of showing that jurisdiction exists. In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). Movius asserts that he lacks sufficient ties to South Carolina to be subject to the jurisdiction of this Court. Moore has not responded to this argument. Therefore, Movius should be dismissed.

**C.  Motion to Dismiss Pursuant to Rule 12(b)(6)**

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.' " Iqbal, --- U.S. at ----, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Moore alleges, in addition to her Title VII and FMLA claims, a variety of supplemental claims. Moore appears to allege a New Jersey common law wrongful discharge claim in violation of public policy and in violation of the CEPA. Moore also alleges retaliatory discharge in violation

of the public policy of South Carolina in Count 4. Most of the other claims in the complaint (*see* Counts 2, 5, 7, 8 and 9) contain citations to South Carolina case law, appearing to indicate a reliance on the law of South Carolina for support.

The complaint raises choice of law issues inadequately addressed by the parties. Defendants make an initial argument that Moore's claims specifically brought under New Jersey law should be dismissed because "South Carolina applies the rule of lex loci delicti to tort and statutory claims." (Def.Mem., p. 10). This argument is followed by a discussion of Moore's ties to South Carolina and her lack of ties to New Jersey. Moore emphasizes the connections with New Jersey and argues that "a jury can determine whether or not New Jersey legal requirements and protections should apply to the employee of a New Jersey company dealt with in the manner Defendant chose to treat Moore." (Pl.Mem., p. 14). The undersigned can say with certainty that choices of law issues are not issues for the jury, but for the Court.

Generally, South Carolina choice of law rules apply to a case pending in the United States District Court for the District of South Carolina. Kirkland v. Sam's East, Inc., 411 F.Supp.2d 639, 640-641 (D.S.C. 2005) citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). South Carolina applies the doctrine of lex loci delicti to tort claims, i.e., "the law of the place where the injury was inflicted." (Santee-Lynches Affordable Housing and Community Development Corporation v. Ellinger, 2010 WL 670096, *2 (D.S.C.) (court declined to rule on choice of law issue due to inadequate record in a legal malpractice case where legal advice given from North Carolina and received in South Carolina)). With respect to contract claims, South Carolina employs the doctrine of lex loci contractu, i.e., "the substantive law of the place the contract was allegedly formed applies." *See* King v. Marriott International, Inc., 520 F.Supp.2d 748, 753 (D.S.C. 2007) (court found

5

that supplemental handbook contract claim was unsustainable either under law of place from which handbook was likely distributed (Maryland) or the law of place where the handbook was likely received by the employee (South Carolina).

1. New Jersey Claims

Moore appears to allege a common law retaliatory wrongful discharge in violation of New Jersey law as well as a CEPA claim in Count 4. Additionally, she alleges a NJFLA violation in Count 6.

a. Wrongful Discharge in Violation of Public Policy (Count 4)

Moore states common law retaliatory discharge claims under the laws of South Carolina and New Jersey. As noted above, South Carolina choice of law rules apply. The issue is whether South Carolina law[3] or New Jersey law[4] applies under the South Carolina choice of law rule. In Ellinger, the Honorable Cameron McGowan Currie, United States District Judge, declined to rule because the issue was not adequately developed in the record before her. She denied a motion for reconsideration without prejudice to allow the record and arguments to be better developed on summary judgment. The present case is in a similar posture.

Moore makes detailed factual allegations and attaches a number of exhibits to her complaint. The allegations and exhibits appear to show that Novo's United States Corporate Office is located in New Jersey, that Moore sent her disability requests there after breaking her ankle, and that was a high level human resources manager (Sutton) whose office was there. Plaintiff and the remaining Defendants do not appear to have worked in New Jersey. The decision making process to terminate

---

[3]See Barron v. Labor Finders of South Carolina, 384 S.C. 21, 682 S.E.2d 271 (Ct.App. 2009).

[4]See Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (N.J. 1980).

Moore is unclear even though the termination letter was written by Sutton, alleged to be a resident of South Carolina. The motion to dismiss on this claim should be denied.

        b. CEPA (Count 4)

Moore also alleges that her termination violated the New Jersey whistleblower statute, CEPA, N.J.S.A. 34:19-1 *et seq*. CEPA was enacted to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employees[5] from engaging in such conduct." Abbamont v. Piscataway Tp. Bd. of Educ, 138 N.J. 405, 431 (1994). N.J. S.A. 34:19-3 states:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care;
>
> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

---

[5]The South Carolina Whistleblower Act differs in that it protects only an employee of a "Public Body." *See* S.C.Code Ann. § 8-27-10, *et seq*.

7

>   (2) is fraudulent or criminal; or
>
>   (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

Defendants argue that "(c)onsistent with the rule of <u>lex loci delicti</u>, courts have refused to apply CEPA when the plaintiff either did not work in New Jersey, or her adverse employment action had no connection with New Jersey." (Def.Mem., p. 11). Defendants cite two cases, neither of which support their argument.

In <u>Norris v. Harte-Hanks, Inc.</u>, 122 F.App'x 554, 2004 WL 2913943 (3rd Cir.), the court upheld a New Jersey District Court ruling that Pennsylvania law governed plaintiff's CEPA claim under New Jersey's choice of law rule which "applies a flexible 'governmental-interest' standard." *Id.* at *2. The circuit court affirmed the district court's granting of summary judgment because plaintiff failed to produce evidence that defendants "engineered the misconduct which [plaintiff] alleged took place [in]...New Jersey, that any such engineering took place in New Jersey, or that any of the Defendants made or influenced the decision to terminate her in New Jersey." *Id.* at *3. Thus, the <u>Norris</u> decision was not based on <u>lex loci delicti</u>, but on a different standard applied at the summary judgment stage of the litigation. Essentially, plaintiff's CEPA claim failed because of lack of evidence connecting the termination decision to New Jersey under the governmental interest standard.

Defendants also cite <u>Bowers v. Foto-Wear, Inc.</u>, 2007 WL 906417 (M.D.Pa.) in support of their argument. In <u>Bowers</u>, the Pennsylvania District Court granted summary judgment to defendants on plaintiff's CEPA claim under Pennsylvania's "most significant contact" choice of law rules. The evidence showed that the only contact that New Jersey had to the case was that the defendant was incorporated there. All other activity in the case occurred in Pennsylvania.

Neither case cited by Defendants was decided under the <u>lex loci delicti</u> rule, and they were decided on the evidence provided at summary judgment. The undersigned concludes, based on these cases, that Moore's CEPA claim is viable and that dismissal at this stage is inappropriate.

c.  NJFLA (Count 6)

In addition to her claim under the FMLA, Moore states a claim under the NJFLA. Defendants allege that this claim is preluded because the NJFLA did not apply to Moore when she took leave after she broke her ankle. Moore has not responded to this argument. "The NJFLA is similar to FMLA, but does not cover leave for an employee's own disability. N.J.S.A. 34:11B-3(i)." <u>Smith v. Medpointe Healthcare, Inc.</u>, 2007 WL 556914 (D.N.J.), *aff'd*, 338 F.App'x 230 (3rd Cir. 2009).

Thus, Moore may not maintain a NJFLA claim based on leave and actions related to her ankle injury.

2.  South Carolina Claims

a.  Wrongful Discharge in Violation of Public Policy (Count 5)

In <u>Ludwick v. This Minute of Carolina, Inc.</u>, 287 S.C. 219, 224-225, 337 S.E.2d 213, 216 (1985), South Carolina recognized a public policy exception to the employment at-will doctrine. "Where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." *Id.* South Carolina has recognized at least two situations to which this exception applies: (1) when an employer requires an employee to violate a criminal law as a condition of continued employment; and (2) when the act of terminating an employee is itself in violation of a criminal law. <u>Culler v. Blue Ridge Elec. Co-op., Inc.</u>, 309 S.C. 243, 246, 422 S.E.2d 91, 92-93 (1992).

The South Carolina courts have narrowly construed the exception announced in Ludwick. In Dockins v. Ingles Mkts., Inc., 306 S.C. 496, 413 S.E.2d 18, 19 (1992), the South Carolina Supreme Court held that no common law public policy wrongful termination claim can be maintained where the employee has an existing statutory remedy. This limitation has been uniformly applied. *See* Natal v. Sisters of Charity, 2006 WL 2864428, *2 (D.S.C.) (collecting cases), Zeigler v. Guidant Corp., 2008 WL 2001943, *2 (D.S.C.) and Bolin v. Ross Stores, Inc., 2009 WL 363990, *4 (D.S.C.)

Defendants argue that Moore's claim for wrongful termination for violation of public policy should be dismissed because she has statutory remedies to redress her termination as she has alleged under Title VII and the FMLA. However, Moore alleges in addition to her sex discrimination and FMLA retaliation claims, that she "was fired in retaliation for her conduct in honestly reporting and disclosing and opposing the unlawful misconduct of Novo Nordisk personnel in violation of the public policy of Title 42 U.S. Code § 1320a-7b(b) prohibiting illegal remunerations involving the sale of pharmaceuticals." (Complaint, ¶ 43). This claim is separate from, and not directly related to, her Title VII and FMLA termination claims. Title 42 U.S.C. § 1320a-7(b) makes it a federal criminal offense to offer a "remuneration" to induce a medical provider to refer a patient for the furnishing of an item or service.

In their reply brief (p. 5), Defendants argue that Moore "has not pleaded any facts suggesting that she was terminated for refusing to follow a mandate to violate the law." The undersigned disagrees. Moore alleges that her supervisor required her to violate the law and then to lie about it when upper management began an investigation. Later she told the truth about the remuneration (i.e., autographed basketballs), thereby opposing the unlawful practice, and was terminated.

b.  IIED (Count 7)

Defendants argue that Moore's IIED claim is preempted by the exclusive provisions of the South Carolina Workers Compensation Act ("SCWCA").  Moore has not responded to this argument. (*See* Pl.Mem., pp. 13-14).

Under the SCWCA, an employee's claims against an employer for personal injury by negligence or as the result of an intentional tort are barred by the exclusive remedy provided under the SCWCA. S .C.Code Ann. § 42-1-540;[6] Dickert v. Metropolitan Life Ins. Co., 306 S.C. 311, 411 S.E.2d 672 (S.C.App.1991), aff'd in part and rev'd on other grounds in part, 311 S.C. 218, 428 S.E.2d 700 (S.C.1993); Taylor v. Cummings Atlantic, Inc., 852 F.Supp. 1279 (D.S.C.1994), aff'd, 1995 WL 88957, 48 F.3d 1217 (4th Cir. March 6, 1995) [Table], cert. denied, 516 U.S. 864, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995) (SCWCA provided former employee with exclusive remedy against employer for claim of intentional infliction of emotional distress); Peay v. U.S. Silicia Co., 313 S.C. 91, 437 S.E.2d 64 (S.C.1993) ("only those injuries inflicted by an employer who acts with a deliberate or specific intent to injure are exempted from the exclusive remedy of the workers' compensation coverage."). The Supreme Court of South Carolina recently reiterated that the only exceptions to the exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the

---

[6]This section provides, in part:

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this Title, respectfully, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin as against his employer, at such inquiry, loss of service or death. S.C.Code Ann. § 42-1-540.

11

intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. Cason v. Duke Energy Corp., 348 S.C. 544, 560 S.E.2d 891, 893 (S.C.2002).

To fall within the exemption, Moore would have to allege that the named individual Defendants were alter egos of Novo. She has made no such allegations. The South Carolina Supreme Court in Dickert has held that supervisory employees, such as the named individual Defendants, do not qualify as the "alter ego" of a corporation. Therefore, Moore's IIED claim is subject to dismissal.

### c.  Civil Conspiracy (Count 9)

Defendants argue that Moore's claims for civil conspiracy should be dismissed because of a failure to adequately plead special damages. Moore has not responded to this argument. (Pl.Mem., p. 14).

Pursuant to South Carolina law, "(c)ivil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring plaintiff, (3) which causes him special damage." Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App. 1989). "South Carolina courts have held that there is no civil conspiracy claim where such claim 'does no more than incorporate the prior allegations and then allege the existence of a civil conspiracy.'" Alonso v. McAllister Towing of Charleston, Inc., 595 F.Supp.2d 645, 651 citing Todd v. South Carolina Farm Bureau, 276 S.C. 284, 293, 278 S.E.2d 607, 611 (1981). Further, "(b)ecause the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in the other causes of action." Pye v. Estate of Fox, 369 S.C. 555, 568, 633 S.E.2d 505, 511 (2006).

Moore's complaint makes detailed factual allegations. (Complaint, ¶¶ 8-56). The factual allegations are followed by her nine claims denoted as "Counts." Each count, referring to the factual allegations, begins with "(t)he foregoing misconduct constitutes..." and proceeds to state Moore's separate claims. This is true as to Count 9, the civil conspiracy claim. Because no separate facts are alleged to constitute the civil conspiracy, the claim should be dismissed. After pleading the counts, the complaint ends with a prayer for damages. Nowhere does Moore allege special damages from the civil conspiracy. The claim is also subject to dismissal for this reason.

Defendants also assert that the claim should be dismissed because a corporation cannot conspire against itself. McMillan v. Oconee Memorial Hosp., Inc., 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006). Moore has not responded to this argument. Moore alleges that all the individual Defendants were employed by Novo. The civil conspiracy claim should also be dismissed on this basis.

### d. Contract Claims (Counts 1, 2 and 8)

Moore alleges a claim for breach of contract (Count 1), breach of contract accompanied by a fraudulent act (Count 2), and breach of the duty of good faith and fair dealing (Count 8). These contract claims are based on a handbook. (Pl.Mem., pp. 2-3). Moore alleges that when she was terminated she was given a letter with a copy of a Novo policy attached. (Complaint, ¶ 38). The termination letter and policy are attached to the complaint as Exhibit A.

South Carolina has long recognized the doctrine of employment at-will. Pursuant to this doctrine, "a contract for permanent employment, so long as it is satisfactorily performed, which is not supported by any consideration other than the obligation or service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party." Shealy v.

Fowler, 188 S.E. 499, 502 (S.C.1936). Under South Carolina law, an at-will employee may be terminated for any reason or for no reason at all. Ludwick, 337 S.E .2d 213. Employment-at-will status can be altered by promises made to an employee in policies, employee handbooks, and employee bulletins. Small v. Springs Industries, 357 S.E.2d 452 (S.C.1987). An employer who wishes to issue a handbook as an advisory statement with no intent on being bound by it must "insert[ ] a conspicuous disclaimer or provision into the written document." Springs, 357 S.E.2d at 454-55.

In the exception to the at-will employment doctrine, an employee handbook containing mandatory statements regarding disciplinary and grievance policies may be enforced against an employer as contractual obligations in a wrongful discharge action, despite the presence of a disclaimer in the handbook which asserts it is not intended to create a contract of employment. Conner v. City of Forest Acres, 560 S.E.2d 606, 610-611 (S.C.2002); Fleming v. Borden, Inc., 450 S.E.2d 589, 594-96 (S.C.1994); Small v. Springs Indus., Inc., 357 S.E.2d 452 (S.C.1987).

Defendants' initial memorandum argues that Moore's contract claims fail because she was an at-will employee. (Def.Mem., p. 12). In their reply memorandum, Defendants argue that Novo's handbook contains a disclaimer. (Reply Mem., p. 6). Moore has sufficiently stated her contract claims based on Novo's handbook. Defendants' motion to dismiss is premature, and their reply introduces a portion of Novo's handbook. Moore should be allowed discovery to obtain the complete handbook, ascertain where it was issued and when, where, and under what circumstances it was delivered to her.[7]

---

[7]The parties appear to agree that Moore's contract claims are governed by South Carolina law. However, the Honorable Patrick Michael Duffy, United States District Judge, in King v. Marriott International, Inc., supra, ruled the law of the place the contract was formed was critical under South Carolina's lex loci contractu rule.

**D. Motion to Strike Pursuant to Rule 12(f)**

Defendants argue that references to the severance package Moore was offered in connection with her termination should be stricken (*see* Complaint, ¶¶ 46-49), because they refer to settlement negotiations.

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "[M]otions under 12(f) are viewed with disfavor by the federal courts and are infrequently granted," and are only granted when the challenged allegations "have no possible relation or logical connection to the subject matter of the controversy" or "cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 1380,1382 (West 2009); *see also* Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir.2001) (upholding district court's decision to strike affirmative defense).

Evidence of compromise and offers to compromise are inadmissable. Fed.R.Evid. 408. The allegations concerning the severance package offered to Moore are immaterial. Therefore, Defendants' motion should be granted.

**Conclusion**

Based on a review of the record and in accord with the above discussion, it is recommended that Defendants' motion to dismiss be granted (1) insofar as Sutton, Movius, Gregg and Thompson are sued as individuals under Title VII and the FMLA; (2) as to Movius due to lack of jurisdiction; (3) as to Plaintiff's NJFLA, IIED and civil conspiracy claim; and (4) as to the motion to strike

references to compromise from the complaint. The motion to dismiss should be denied in all other respects.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

February 10, 2011