IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Tina Moore, | ) | |
| | ) | C/A No. 1:10-2182-MBS-JRM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **O R D E R** |
| Novo Nordisk, Inc., Angela Sutton, | ) | |
| Jason Movius, Leah Gregg, and | ) | |
| Bill Thompson, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Tina Moore brought this action in the Court of Common Pleas for Aiken County, South Carolina, on July 9, 2010. Plaintiff alleges, among other things, causes of action arising under Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act of 1993 ("FMLA"). Defendants removed the case on the grounds of federal question jurisdiction on August 19, 2010. This matter is before the court on Defendants' motion for partial dismissal of the complaint and to partially strike the complaint, which motion was filed on August 26, 2010. Plaintiff filed a response to the motion on September 9, 2010, to which Defendants filed a reply on September 20, 2010.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the within action was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling. The Magistrate Judge issued a Report and Recommendation on February 10, 2011. Defendants filed objections to the Report on February 28, 2011, to which Plaintiff filed a reply on March 22, 2011.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo

determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The facts are thoroughly discussed in the Report and Recommendation. Briefly, Plaintiff is a citizen and resident of Aiken County, South Carolina. She was employed by Defendant Novo Nordisk ("Novo") from on or about April 1, 2001 until she was discharged on August 10, 2009. Novo is a foreign corporation incorporated in New Jersey. Defendant Angela Sutton was Plaintiff's direct supervisor and held the position of Novo's District Business Manager. Sutton is a resident of South Carolina. Defendant Jason Movius is a co-worker of Plaintiff who also was supervised by Sutton. Movius is a Georgia resident. Defendant Leah Gregg is a resident of Florida. She also is a Regional District Manager who supervised, managed, and conducted business for Novo in South Carolina, including the supervising of Plaintiff. Defendant Bill Thompson is a resident of Pennsylvania who holds a management position in Novo's Human Resources Department.

Novo is a global pharmaceutical manufacturer and distributor. At the time of the underlying events, Plaintiff was employed by Novo as Senior Diabetes Care Specialist (Pharma Rep) with duties including call on hospitals and internal medicine and family physicians for the purpose of selling insulin and related products. Plaintiff alleges that Novo is subject to the prohibitions applicable to pharmaceutical marketing contained in 42 U.S.C. § 1320a-7b, which provides, in relevant part:

(b) Illegal remunerations

* * * *

2

(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person--

> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

According to Plaintiff, she and Movius were instructed by Sutton to provide autographed basketballs to targeted physicians for the purpose of increasing sales in the territories under the management and oversight of Sutton. Plaintiff contends that she and Movius distributed autographed basketballs to various medical providers. Plaintiff alleges that on or about July 1, 2009, Sutton telephoned Plaintiff to warn her that the basketball scheme was being investigated by Novo's counsel and to direct her to deny to counsel that she had engaged in the scheme. On or about July 8, 2009, Plaintiff denied to Novo's counsel that she had given out autographed basketballs to potential customers. On or about the following day, Plaintiff disclosed to counsel that she had lied about being involved in the scheme and that she had not been truthful at the insistence of Sutton. Plaintiff was involved in a conference call with Sutton, Gregg, and others on July 9, 2009.

On July 11, 2009, Plaintiff broke her ankle and required surgery. Plaintiff was approved for FMLA leave. On August 10, 2009, before Plaintiff returned to work. She was terminated by Sutton on the grounds that she had given an autographed basketball to a physician. Defendant Thompson called Plaintiff on August 12, 2009 to offer her a severance package. Plaintiff alleges that she

3

complained that she was being terminated for following her supervisor's instructions, and, upon Thompson's request, Plaintiff recounted her version of the facts to Thompson via email. Thompson thereafter forwarded the proposed severance package to Plaintiff along with an "Agreement, Release and Waiver" that comprised a waiver of claims against Novo that might arise under Title VII, the New Jersey Family Leave Act, the New Jersey Conscientious Employee Protection Act, among other things. Plaintiff refused to execute the Agreement, Release and Waiver.

Plaintiff alleges causes of action for breach of contract based upon Novo's Disciplinary Termination Policy Number 237 (Count I); breach of contract accompanied by a fraudulent act (Count II); discrimination based on gender in violation of Title VII (Count III); retaliatory wrongful discharge in violation of public policy under the common and statutory law of South Carolina and New Jersey, including the New Jersey Conscientious Employee Protection Act ("CEPA") (Count IV); wrongful discharge in violation of the public policy under the common law of South Carolina (Count V); violation of the FMLA and New Jersey Family Leave Act ("NJFLA") (Count VI); intentional infliction of emotional distress (Count VII); breach of duty of good faith and fair dealing (Count VIII); and civil conspiracy (Count IX). Plaintiff seeks lost wages, back pay, front pay, and compensatory and punitive damages.

## II. DISCUSSION

In the motion for partial dismissal and to partially strike the complaint, Defendants assert the following:

1.    Movius should be dismissed as a Defendant because the court lacks personal jurisdiction over him. According to Defendants, Movius who lives and works in the State of Georgia, owns no property in South Carolina, and does not transact business in this state.

4

2.      Plaintiff's claims arising under New Jersey common and statutory law should be dismissed because Plaintiff's alleged injuries occurred in South Carolina, and South Carolina applies the rule of lex loci delecti to tort and statutory claims.

3.      Plaintiff's breach of contract claim should be dismissed because Plaintiff was an at-will employee and the Disciplinary Policy did not alter her at-will employment status.

4.      Plaintiff's claim for breach of the duty of good faith and fair dealing should be dismissed because the claim is derived from the existence of a contract, and Plaintiff cannot establish the existence of a contract.

5.      Plaintiff's claim for breach of contract accompanied by a fraudulent act should be dismissed because (1) Plaintiff cannot establish the existence of a contract, and (2) Plaintiff failed to plead specific evidence of fraudulent activity.

6.      Plaintiff's wrongful discharge claim should be dismissed because she has existing statutory remedies, specifically her claims under Title VII and the FMLA.

7.      Plaintiff's claim for intentional infliction of emotional distress should be dismissed as barred by the Workers' Compensation Act and because the facts do not support the cause of action.

8.      Plaintiff's claim for civil conspiracy should be dismissed because Plaintiff failed to plead any of the elements, including special damages.

9.      Any Title VII or FMLA claims asserted against the individual Defendants should be dismissed because such claims can be asserted only against the employer and not against the individual supervisors.

10.     Plaintiff's references to settlement discussions should be stricken as immaterial and

5

prejudicial.

The Magistrate Judge recommended that Defendants' motion for partial dismissal should be granted as to the assertion that the court lacks personal jurisdiction over Movius. The Magistrate Judge further recommended that Sutton, Gregg, and Thompson be dismissed from any claims brought under Title VII or the FMLA. As to the various causes of action, the Magistrate Judge recommended that Defendants' motion for partial dismissal be granted as to Plaintiff's claims for intentional infliction of emotional distress (Count VII) and civil conspiracy (Count IX). The Magistrate Judge further recommended that the motion to partially strike be granted with respect to Plaintiff's references to settlement discussions. No party filed objections to the Magistrate Judge's recommendations as set forth hereinabove. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). The court, having fully reviewed the record, concurs in the recommendations of the Magistrate Judge as to granting in part Defendants' motion for partial dismissal and motion to strike.

The Magistrate Judge further recommended that Defendants' motion for partial dismissal be denied as to Plaintiff's claims for breach of contract (Count I), breach of contract accompanied by a fraudulent act (Count II), wrongful discharge in violation of public policy (Count V), violation of the NJFLA (Count VI), and breach of the duty of good faith and fair dealing (Count VIII). No party filed objections to the recommendations of the Magistrate Judge as to Counts I, II, V, VI (as to the NJFLA), and VIII. The court concurs in the recommendations of the Magistrate Judge as to denying in part Defendants' motion for partial dismissal of Counts I, II, V, VI (as to the NJFLA), and VIII.

6

The Magistrate Judge further recommended that the court deny Defendants' motion for partial dismissal with respect to Plaintiff's claims arising under New Jersey common and statutory law (Counts IV). The Magistrate Judge noted that South Carolina's choice of law rules apply to cases pending in the United States District Court for the District of South Carolina, and that South Carolina applies the doctrine of lex loci delecti to tort claims, that is, the law of the place where the injury was inflicted. Based upon the applicable choice of law, the Magistrate Judge determined that Defendants' motion for partial dismissal of Plaintiff's New Jersey claims should be denied. The Magistrate Judge found that the decision-making process to terminate Plaintiff was unclear even though the termination letter was written by Sutton, a South Carolina resident. The Magistrate Judge further rejected Defendants' argument that CEPA would not apply because Plaintiff did not work in New Jersey and her adverse employment action had no connection with New Jersey. Defendants filed objections to this portion of the Magistrate Judge's Report and Recommendation on February 28, 2011.

Defendants contend that Plaintiff cannot state claims cognizable under New Jersey statutory or common law. For the following reasons, the court disagrees that dismissal is appropriate at this time.

Turning first to New Jersey statutory law, CEPA makes it unlawful for an employer to take retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree

or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into the quality of patient care; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care;

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19-3.

New Jersey courts have found the Act to be remedial legislation that protects an employee

from employer retaliation in cases where the employee "blows the whistle" on illegal or unethical

activity.  Reynolds v. TCM Sweeping, Inc., 340 F. Supp. 2d 541, 545 (D.N.J. 2004) (citing Hernandez v. Montville Twp. Bd. of Educ., 808 A.2d 128 (2002)).  A successful plaintiff under CEPA must show four elements: (1) she reasonably believed that an activity, policy, or practice of her employer was in violation of a law, rule, or regulation promulgated pursuant to law or was fraudulent or criminal; (2) she objected to or complained about the activity, policy, or practice; (3) retaliatory action was taken against her (i.e., an adverse employment action occurred); and (4) there was a causal link between the plaintiff's action and the retaliatory or adverse action of the defendant employer.  Id. (citing McCullough v. Atlantic City, 137 F. Supp. 2d 557, 573 (D.N.J. 2001)).

In support of their argument, Defendants cite to Norris v. Harte-Hanks, Inc., 122 F. App'x 566 (3d Cir. 2004), and Bowers v. Foto-Wear, Inc., No. 3:CV-03-1137, 2007 WL 906417 (M.D. Pa. Mar. 22, 2007), for the proposition that federal courts exercising diversity jurisdiction have consistently refused to apply New Jersey law where the plaintiff's cause of action has no connection with the State of New Jersey. Defendants assert that all of the events related to Plaintiff's alleged injury, the termination of her employment, occurred outside of New Jersey.  Defendants recite that Plaintiff worked in South Carolina and Georgia, her employment termination took place in Georgia, and the events and conduct giving rise to Plaintiff's discharge took place in Georgia and South Carolina.  According to Defendants there is no nexus between Plaintiff's alleged injury and the State of New Jersey.  The court disagrees.  The nexus between Plaintiff's alleged injury and the State of New Jersey is that Novo, Plaintiff's employer, is incorporated in New Jersey.

To accept Defendants' argument would compel the conclusion that a national or multi-national corporation could establish headquarters in New Jersey, hire employees to work in every state except New Jersey, and then be exempt from the remedial purposes of CEPA.  Further, recent

opinions from New Jersey state courts demonstrate that the courts "decline to impose artificial geographical limits on the harm or illegality that the objecting employee sought to avoid." <u>See</u> <u>Mehlman v. Mobil Oil Corp.</u>, 707 A.2d 1000 (N.J. 1998) (allowing CEPA action against new Jersey employer by employee who objected to a practice that violated another jurisdiction's public policy and endangered that jurisdiction's citizens); <u>see also</u> <u>Aviles v. Big M, Inc.</u>, Docket No. L-1254-08, 2011 WL 780887 (N.J. Super. Ct. App. Div. Mar. 8, 2011) (unpublished) (New York employee); <u>Menth v. Heartland Ostrich Farm</u>, Docket No. L-480-9, 2011 WL 780884 (N.J. Super. Ct. App. Div. Mar. 8, 2011) (unpublished) (Pennsylvania employee); <u>Norenius v. Multaler, Inc.</u>, Docket No. L-449-06, 2008 WL 4162878 (N.J. Super. Ct. App. Div. Sept. 11, 2008) (unpublished) (Colorado employee). The cases cited by Defendants, <u>Norris</u> and <u>Bowers</u>, are distinguishable from the within case because in both those cases the employer was located in a state other than New Jersey. The court cannot say that Plaintiff fails to state a plausible claim under CEPA. Defendants' motion to dismiss is denied as to this issue.

Turning to Plaintiff's contention that she was subjected to a retaliatory wrongful discharge in violation of public policy under the common law of New Jersey, the court declines to grant Defendants' motion to dismiss at this time, and instead concurs in the recommendation of the Magistrate Judge that further discovery is needed. The court notes, however, the Plaintiff's common law claim may be subject to dismiss pursuant to N.J. Stat. Ann. § 34:19-8, which provides that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation under the common law."

III.  <u>CONCLUSION</u>

For the reasons stated, the court adopts the Report and Recommendation except to the extent the reasoning of the court as to CEPA may be inconsistent with the Magistrate Judge's analysis.  The case is recommitted to the Magistrate Judge for further pretrial handling.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

March 22, 2011.

11