IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Tina Moore, | ) | C/A No.: 1:10-2182-TLW-SVH |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | REPORT AND RECOMMENDATION |
| Novo Nordisk, Inc., Angela Sutton, Leah Gregg, and Bill Thompson, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on Defendants' motion for summary judgment. [Entry #56]. Plaintiff filed a response to the motion [Entry #63], and Defendants filed a reply [Entry #64]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

Plaintiff Tina Moore ("Plaintiff") originally filed this employment discrimination case in the Court of Common Pleas for Aiken County. Defendant Novo Nordisk, Inc. ("Novo"), removed the case to this court on August 19, 2010. Plaintiff's claims for civil conspiracy and intentional infliction of emotional distress were dismissed by the Honorable Margaret B. Seymour on March 22, 2011. [Entry #16]. Additionally, defendant Jason Movius was dismissed from the case for lack of personal jurisdiction, and Plaintiff's Title VII and FMLA claims as to defendants Sutton, Gregg, and Thompson were dismissed. *Id*. The following claims remain: (1) breach of contract; (2) breach of contract accompanied by a fraudulent act; (3) breach of the duty of good faith and fair dealing; (4) wrongful discharge; (5) a claim pursuant to the Conscientious

Employee Protection Act ("CEPA") under New Jersey law; (6) sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") against Novo; and (7) Family Medical Leave Act ("FMLA") interference and retaliation against Novo.

All pretrial proceedings in this case were referred to the undersigned on January 1, 2012, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). [Entry #51]. Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends Defendants' motion for summary judgment be granted.

I. Factual Background[1]

Until her discharge on August 10, 2009, Plaintiff was employed by Novo as a Senior Diabetes Care Specialist, whose duties included calling on hospitals and internal medicine physicians for the purpose of selling insulin and other diabetes-related products. Compl. at ¶ 11 [Entry #1-1]. Movius was Plaintiff's co-worker and also employed as a Diabetes Care Specialist. *Id.* at ¶ 4. Defendant Angela Sutton ("Sutton"), a South Carolina resident, was the immediate supervisor of both Movius and Plaintiff. *Id.* at ¶ 3. Leah Gregg ("Gregg") was Plaintiff's Regional District Manager. *Id.* at ¶ 5. Defendant Bill Thompson is a resident of Pennsylvania who was the HR manager supporting the diabetes team for Novo at the time of Plaintiff's termination. *Id.* at ¶ 6.

---

[1] Any factual discrepancies or inferences are viewed in the light most favorable to the Plaintiff.

2

Novo, a New Jersey corporation, is a global pharmaceutical manufacturer and distributor. *Id*. at ¶ 8. As such, Novo is subject to the prohibitions applicable to pharmaceutical marketing contained in 42 U.S.C. § 1320a-7b, such as prohibitions on offering or providing kickbacks or bribes to induce a person to arrange for or recommend purchasing a product or service. *Id*. at ¶ 9. Novo's policies also forbid employees from providing items to health care providers for their personal benefit. [Entry #56-1 at 97].

On or about February 28, 2009, Novo Nordisk sponsored an all-day health care fair in Augusta, Georgia entitled "Taking Care of Your Diabetes" ("TCOYD"). Moore Dep., 74:3–75:10 [Entry #63-7]. According to Plaintiff, Sutton informed herand Movius prior to the event that she planned to have NBA all-star Dominique Wilkins, the speaker at TCOYD, autograph a basketball that she would give to a physician in their territory. Compl. at ¶¶ 11–12. Plaintiff claims Sutton instructed her and Movius to also have basketballs autographed and distributed for the purpose of increasing sales in the territories under Sutton's management and oversight. *Id.* at ¶ 13. Thus, Plaintiff asked Wilkins to sign between eight and ten basketballs. Moore Dep., 76:15–77:8.

On July 1, 2009, the company received an anonymous tip that Plaintiff had distributed basketballs to Dr. Barry Tarpley and Dr. George Pursley in exchange for their business. [Entry #63-11 at 33]. Novo's Chief Compliance Officer, Frank Bigley, investigated the complaint. According to Plaintiff, Sutton telephoned her on July 1, 2009 to warn her that she was being investigated by Bigley and directed her to deny that she had distributed any basketballs. Compl. at ¶ 20; Moore Dep., 98:10–101:18. On July 7, 2009, Bigley conducted a conference call with Plaintiff, Gregg, Sutton, and Thompson.

Moore Dep., 108:22–109:6; Thompson Dep., 5:4–12, 57:22–58:10. On that telephone conference, Plaintiff denied giving basketballs to physicians. Moore Dep., 109:7–12.

On July 8, 2009, Bigley contacted Dr. Tarpley, who confirmed that he had received an autographed basketball from Plaintiff. Bigley Dep., 41:4–10 [Entry #63-11]; Moore Dep., 112:10–113:8. Later that day, Sutton contacted Plaintiff to inform her that Dr. Tarpley had told Bigley that she had given him an autographed basketball. Moore Dep., 112:10–113:8.

That evening, Plaintiff contacted Bigley and admitted that she had lied about distributing the basketballs and had done so at Sutton's insistence. Moore Dep. 112:18–115:12. The following morning on July 9, Bigley, Plaintiff, Sutton, Gregg, and Thompson had another conference call, during which Plaintiff claims Sutton admitted she had warned Plaintiff of the investigation and instructed her to lie. Moore Dep. 116:10–25. Plaintiff was then excused from the call. *Id.* On July 11, 2009, Plaintiff broke her ankle and required surgery. Compl. at ¶ 29. Plaintiff was approved for FMLA leave. *Id.* at ¶ 32.

After completing his investigation regarding the basketball distribution, Bigley prepared a written report summarizing his findings and recommendation. Bigley Dep., Exh. 2 [Entry #63-11 at 33–36]. The report states that "[t]he recommendation from Compliance is for the termination of [Plaintiff's] employment." *Id.* Gregg agreed with Bigley's recommendation and decided to terminate Plaintiff's employment. Bigley Dep., 46:22–47:9; Gregg Declaration, ¶¶ 9, 11 [Entry #56-9]. On or about August 10, 2009, before Plaintiff returned to work from FMLA leave, Gregg, Sutton, and Thompson met

with her at the airport in Augusta, Georgia to communicate Novo's decision to terminate her employment. Moore Dep., 123:13–124:24. Shortly thereafter, Thompson and Plaintiff spoke on the telephone, during which Plaintiff alleges she complained that she was being terminated for following her supervisor's instructions. *Id*. at 125:13–126:4. Upon Thompson's request, Plaintiff recounted her version of the facts to Thompson via email. *Id.* According to the complaint, Thompson thereafter forwarded the proposed severance package to Plaintiff along with an "Agreement, Release and Waiver" that comprised a waiver of claims against Novo that might arise under Title VII, the New Jersey Family Leave Act, the New Jersey Conscientious Employee Protection Act, among other things. Compl. at ¶ 47. Plaintiff refused to execute the Agreement, Release and Waiver. *Id*. at ¶ 49.

II. Discussion

    A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

5

the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B. Analysis

1. Choice of Law

Plaintiff has brought claims pursuant to both South Carolina and New Jersey common law. Defendants argue that Plaintiff cannot set forth a claim pursuant to either state's law, as Plaintiff's territory was limited to Georgia for the last two years and she violated the company policy in Georgia by distributing the basketballs to physicians.

"Under traditional South Carolina choice of law principles, the substantive law governing [an] action is determined by the state in which the injury occurred." *Lister v. NationsBank of Delaware, N.A.*, 494 S.E.2d 449, 454 (S.C. App. 1997); *Encompass Ins. Co. of Am. v. Montgomery Mut. Ins. Co.*, No. 09-1465, 2010 WL 1791262, at *1 (D.S.C. May 3, 2010) ("the governing choice of law rule applied by South Carolina courts was the rule of *lex loci contractus*, which requires applying the law of the state where the [contract was formed or the injury occurred]"). Here, Plaintiff's termination letter was signed by Sutton, who lives and works in South Carolina. [Entry #63-4]. Additionally, Plaintiff was a South Carolina resident at the time of the termination and avers that she performed many of her duties from her home in South Carolina. At a minimum, a significant part of the injury occurred in South Carolina.[2] On the other hand, although

---

[2] The undersigned also notes that Defendants previously argued that the court should apply South Carolina law. *See* Defs.' Motion to Dismiss [Entry #5]. Although the court

Novo is a New Jersey corporation and some of the employees involved in the investigation work from the New Jersey office, none of the underlying events took place in New Jersey. Therefore, South Carolina law should apply.

2. Breach of Contract Claim and Breach of Contract Accompanied by a Fraudulent Act

Novo argues that Plaintiff's breach of contract claim fails because she was an at-will employee and its policies did not create contractual promises. In response Plaintiff argues that at-will employees have contractual relationships with their employers and Novo created contractual promises through its disciplinary policy. Specifically, Plaintiff argues that Novo breached her employment contract because the disciplinary policy promises it would administer appropriate disciplinary action and that disciplinary or termination would be reviewed with human resources for consistency.

The disciplinary policy Plaintiff appears to be citing states as follows: "Appropriate disciplinary action is determined by the manager and reviewed with HR for consistency of practice based on the circumstances of each case." [Entry #56-4 at 2]. "To be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697 (S.C. 2005). General policies of non-discrimination and non-retaliation such as those that state "[i]t is important that individuals are treated fairly" and that the employer "supports an open door-policy" are "not sufficient to constitute an actionable promise." *Cartee v. Wilbur Smith Assocs., Inc.*, No. 3:08-4132-JFA, 2010 WL

---

recognizes that the parties have investigated this matter further since their motion to dismiss was filed, the reasons for applying South Carolina law still apply.

1052091 (D.S.C. Feb. 3, 2010). However, mandatory, progressive discipline procedures may constitute enforceable promises. *Hessenthaler,* 616 S.E.2d at 698. "Such procedures typically provide that an employee may be fired only after certain steps are taken. When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id*. Here, the language Plaintiff relies upon is not specific or mandatory such that it creates a contractual term. "Appropriate disciplinary action" is more akin to a promise of "fair treatment" that South Carolina courts have found is not enforceable.

Even if the court assumes, without deciding, that the language Plaintiff relies on created a promissory, contractual obligation by Novo, Plaintiff has not shown that Novo breached the promise. While Plaintiff may disagree that her termination constitutes "appropriate disciplinary action," the policy states that the manager makes that determination. Additionally, although Plaintiff may disagree that she was treated consistently, which is essentially the basis of her sex-discrimination claim, the disciplinary action was reviewed by HR pursuant to the policy. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's claims for breach of contract and breach of contract accompanied by a fraudulent act.

3. Breach of Good Faith and Fair Dealing

Plaintiff has also brought a claim for breach of the implied covenant of good faith and fair dealing. South Carolina courts have inferred such a covenant in the contract context. *Tharpe v. G.E. Moore Co.*, 174 S.E.2d 397 (S.C. 1970). However, South Carolina courts have declined to apply this covenant to the employment at-will situation.

8

*Keiger v. Citgo, Coastal Petroleum, Inc.*, 482 S.E.2d 792 (S.C. App. 1997) (affirming trial judge's dismissal of cause of action for breach of implied covenant of good faith and fair dealing where employee failed to allege in her complaint that her at-will employment status had been altered).

Additionally, where a party has not been able to show a breach of a contract, South Carolina courts have declined to find a breach of the implied covenant of good faith and fair dealing. *Adams v. G.J. Creel & Sons, Inc.*, 465 S.E.2d 84, 85 (S.C. 1995) ("[T]here is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do."). Therefore, in light of the undersigned's recommendation, *supra*, regarding Plaintiff's breach of contract claim, it is also recommended that Defendants be granted summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair-dealing.

    4.    Wrongful Discharge in Violation of Public Policy

In *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985), the South Carolina Supreme Court first recognized a public policy exception to the employment at-will doctrine. The exception has been recognized in only two situations: (1) when an employer requires an employee to violate a criminal law as a condition of continued employment and employee refuses to do so; or (2) when the act of terminating an employee is itself in violation of a criminal law. *Culler v. Blue Ridge Elec. Co-op, Inc.*, 422 S.E.2d 91, 92–93 (S.C. 1992). Neither exception applies in this case.

Plaintiff offers no facts showing that her termination violated any criminal law. Instead, Plaintiff argues that Sutton instructed her to distribute autographed basketballs to

physicians, which she contends is a violation of 42 U.S.C. § 1320a-7b. Compl. ¶ 9. Although Plaintiff argues that "jurors know that to disobey a supervisor's direct instructions is to subject oneself to discharge," she admits that Sutton never stated that her employment would be terminated if she refused to distribute basketballs to physicians. Entry #63 at 19; Moore Dep., 69:13–20.[3] Because Plaintiff admits she was not instructed to violate a criminal statute as a continued condition of her employment, her wrongful discharge claim fails.[4] *Garner v. Morrison Knudsen Corp.*, 456 S.E.2d 907, 909 (S.C. 1995) (to raise claim for wrongful discharge under South Carolina's public policy exception to at-will employment, plaintiff must show that "employer requires an at-will employee, as a condition of retaining employment, to violate the law").

Plaintiff also alleges that Sutton instructed her to lie to Bigley about distributing the basketballs. However, Plaintiff's deposition testimony does not indicate that Sutton threatened termination for failure to lie, but instead informed her that she would lose her job if she did not lie. Moore Dep., 99:6–25, 101: 8–18. However, the distinction may be largely academic, as lying during an internal employment investigation is not a violation of criminal law. Therefore, Plaintiff has not set forth evidence sufficient to prove a claim for wrongful discharge in violation of public policy and the undersigned recommends Defendants be granted summary judgment on this claim.

---

[3] Plaintiff indicated on her Facebook page that Sutton had "advised" her to distribute basketballs. Moore Dep., 72:9 –73:1.

[4] Plaintiff notes that in the report and recommendation addressing Defendants' partial motion to dismiss, the previously-assigned magistrate judge found that Plaintiff had presented a claim for wrongful discharge in her complaint. However, that report viewed the facts under a different standard of review and before they were fleshed out by discovery.

5. New Jersey Conscientious Employee Protection Act[5]

Plaintiff has also brought a claim pursuant to CEPA, a New Jersey whistle-blowing statute. Judge Seymour previously found that Novo's incorporation in New Jersey provides a sufficient nexus to apply this statutory cause of action in this case. [Entry #19 at 9–10]; *see also, Motor Club of Am. Ins. Co. v. Hanifi*, 145 F.3d 170 (1998) (finding that Maryland public policy would not be offended by the application of a New York statute providing additional liability where Maryland common law otherwise applied). Specifically, CEPA makes it unlawful for an employer to take retaliatory action against an employee because the employee discloses to a supervisor or public body an activity or practice that the employee believes is in violation of the law. N.J. Stat. Ann. § 34:19-3. A successful plaintiff under CEPA must show four elements: (1) she reasonably believed that an activity, policy, or practice of her employer was in violation of a law, rule, or regulation promulgated pursuant to law or was fraudulent or criminal; (2) she objected to or complained about the activity, policy, or practice; (3) retaliatory action was taken against her (i.e., an adverse employment action occurred); and (4) there was a causal link between the plaintiff's action and the retaliatory or adverse action of the defendant employer. *Reynolds v. TCM Sweeping, Inc.*, 340 F.Supp. 2d 541, 545 (D.N.J.

---

[5] The court notes that N.J. Stat. Ann § 34:19-8 provides that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation under the common law." Therefore, the undersigned notes that Plaintiff cannot simultaneously maintain her wrongful discharge and CEPA claims, as they are based on the same alleged retaliation.

2004) (citing *McCullough v. Atlantic City*, 137 F. Supp. 2d 557, 573 (D.N.J. 2001)). Plaintiff has failed to prove these elements.

First, Plaintiff has failed to show that she believed the distribution of autographed basketballs was a violation of law. Plaintiff indicated in her deposition that, upon being informed that she was being investigated, she did not understand what she had done wrong. Moore Dep., 100:11–12. Next, Plaintiff did not object or complain about the distribution of the basketballs. Instead, an anonymous complaint was lodged against Plaintiff about her participation in the alleged illegal activity. [Entry #63-11 at 33]. Plaintiff initially lied about her participation, and only after her dishonesty was discovered did she admit her participation and provide details to Bigley. Finally, Plaintiff has not offered evidence, beyond her mere speculation, that her termination was the result of retaliation for eventually admitting she had distributed basketballs and/or alleging that Movius and Sutton were also involved. Novo maintains that Plaintiff was terminated for distributing the basketballs and also for lying about it. [Entry #1-1 at 22; Entry #56-9 at 3]. Additionally, Plaintiff herself alleges that Sutton informed her that she would be fired if she admitted to distributing the basketballs to physicians. This allegation actually supports Novo's claim that the basketball distribution was a reason for termination. Because, Plaintiff has not proved the elements necessary to support a CEPA claim, the undersigned recommends Defendants be granted summary judgment on this claim.

      6.     Sex Discrimination under Title VII

Plaintiff alleges she was discriminated against in violation of Title VII on the basis of her gender. Because Plaintiff lacks any direct evidence of gender discrimination, she

proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, that she was replaced (in the case of a discharge claim) by someone from outside of her protected class, or that there is some other evidence giving rise to an inference of unlawful discrimination. *See Austen v. HCA Health Servs. of Virginia, Inc.*, 5 Fed. Appx. 253 (4th Cir. 2001); *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995). If Plaintiff establishes the prima facie case, the burden then shifts to Defendants "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.*

Here, it is undisputed that Plaintiff is a member of a protected class and suffered an adverse employment action. Novo argues that she was not performing her job satisfactorily at the time of the adverse employment actions. Specifically, Novo argues that she violated company policies by providing autographed basketballs to physicians and subsequently lying about it. Plaintiff argues that she was performing her job satisfactorily because she gave away the basketballs and lied about it pursuant to her supervisor's instruction.

Assuming, without deciding, that Plaintiff was performing her job satisfactorily in light of her allegations that Sutton directed her to violate company policy, it is Novo's

13

burden to show a legitimate, nondiscriminatory reason for her termination. Novo submits that Plaintiff was terminated both for giving away the basketballs and for lying about it. [Entry #1-1 at 22; Entry #56-9 at 3]. Plaintiff's knowing violation of company policy and dishonesty regarding the violation, even if done at her immediate supervisor's direction, may still constitute a non-discriminatory reason for termination. Although Plaintiff may believe that her termination was unfair because she was allegedly following her supervisor's direction, the stated reasons for the termination are nonetheless legitimate and non-discriminatory on their face.

Therefore, the burden shifts back to Plaintiff to demonstrate that Novo's stated reason was pretextual. Plaintiff simply alleges Novo engaged in disparate treatment because she was terminated and Movius, who she contends also gave away basketballs to physicians, was not terminated. However, assuming Plaintiff's version of the facts, she has set forth no evidence that the decision-makers knew that Movius gave basketballs to physicians. Although Plaintiff averred in an affidavit that Movius told her he gave a basketball to doctor and she testified that they were together when she gave a basketball to another doctor, she has not shown that she informed Novo of the same prior to her termination. The Fourth Circuit has repeatedly explained that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (internal citations omitted). Additionally, Plaintiff's allegation that Novo did not conduct a proper investigation is insufficient to support a claim for pretext. As the Fourth Circuit has held:

> [F]ocusing on the quality of internal investigations misses the point. A federal court does not sit as a kind of super-personnel department weighing

the prudence of employment decisions made by firms charged with employment discrimination. Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory. If the employer's reason for termination is not forbidden by law, it is not our province to decide whether the reason was wise, fair or even correct, ultimately so long as it was truly the reason for the plaintiff's termination.

*Cupples v. AmSan, LLC*, 282 F. App'x 205, 210 (4th Cir. 2010); *see also Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (summary judgment affirmed because "[e]ven if [the] investigations were improper or substandard, that does little to help [plaintiff] establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for termination"). Here, Plaintiff has not set forth any evidence that Novo's reasons for terminating her were discriminatory, which is the sole issue before the court. Therefore, the undersigned recommends Novo be granted summary judgment on Plaintiff's Title VII claim.

### 7. Interference and Retaliation under the FMLA[6]

Plaintiff claims that Novo retaliated against her for making a claim under the FMLA. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To establish a prima facie case of retaliation under the FMLA, Plaintiff must show: (1) she made use of a protected right under the

---

[6] It appears that the court's prior order denying in part Defendants' motion to dismiss intended to dismiss Plaintiff's claim pursuant to the NJFLA, pursuant to the recommendation of the previously-assigned magistrate judge and without objection from Plaintiff. [Entry #19]. The parties appear to agree that Plaintiff's NJFLA claim has been extinguished. However, in an abundance of caution and to the extent Plaintiff argues that her claim under the NJFLA was not dismissed, the undersigned recommends it be dismissed for the reasons articulated in Entry #16.

15

FMLA; (2) she was adversely affected by an employment decision; and (3) that there is a causal connection between Plaintiff's protected activity and the employer's adverse employment action. *See, e.g., Perry v. Computer Sciences Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011).

Plaintiff claims that there is a causal connection between her termination and her FMLA leave because (1) there was a short temporal relation; (2) her FMLA leave was "brought up and discussed" during her termination meeting; and (3) terminating her was cheaper than providing the leave. Though there was a short temporal relation between Plaintiff's FMLA leave and her employment termination, it is also undisputed that Novo's discovery of, and investigation into, Plaintiff's misconduct took place before she applied for FMLA leave. Moore Dep., 114:12–117:3; 127:7–17; 129:19–131:10. The FMLA "does not protect an employee on leave from an adverse employment decision that would have occurred had she not taken leave." *Thompson v. Spartanburg Cnty.*, C/A No. 06-1248, 2007 WL 2477338, at *9 (D.S.C. Aug. 28, 2007); *see also, Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005) (stating that "the FMLA's plain language and structure dictates that, if an employer were authorized to discharge an employee if the employee were not on FMLA leave, the FMLA does not shield an employee on FMLA leave from the same, lawful discharge"); *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004) (finding that "[i]f dismissal would have occurred regardless of the request for an FMLA leave, however, an employee may be dismissed even if dismissal prevents her exercise of her right to an FMLA leave").

Additionally, Plaintiff admits that Bigley was unaware that she applied for and was granted FMLA leave at the time he made his recommendation to terminate her employment. Moore Dep., 128:13–129:6. With regard to the discussion of her FMLA leave during her termination meeting, Plaintiff testified that it was she who raised the issue of her FMLA leave. Moore Dep., 126:14–25. Regardless, a discussion of her FMLA leave during her termination meeting, by itself, is not sufficient evidence that her leave was a motivating factor in her termination. Further, Plaintiff has not provided any evidence beyond mere speculation that money was a motivating factor for her termination in light of her FMLA leave. Therefore, Plaintiff has not set forth a prima facie case that she was terminated in retaliation for filing an FMLA claim.

To the extent she claims Novo otherwise interfered with her rights under the FMLA, she has failed to provide evidence of the same. Plaintiff admits that she was approved for the FMLA leave she requested. [Entry #1-1 at 66]. However, upon her termination on August 10, 2009, she was no longer an eligible employee under the FMLA. As discussed above, the fact that Plaintiff was on FMLA leave does not insulate her from termination. Therefore, it is recommended that Novo be granted summary judgment on Plaintiff's FMLA claim.

III.  Conclusion

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment [Entry #56] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 26, 2012  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).